FOR THE

## COUNTY OF WINDHAM,

AT THE

### FEBRUARY TERM, 1864.

---

PRESENT:

HON. ASA O. ALDIS,
HON. JOHN PIERPOINT,
HON. LOYAL C. KELLOGG, } *Assistant Judges.*
HON. ASAHEL PECK,

---

\*JOHN ARMS *v.* JOHN A. CONANT ET AL.

[IN CHANCERY.]

*Corporation. Agency. Deed.*

The conferring of authority by the directors of a corporation upon an agent to execute a deed, is not a corporate act. The directors act in such a case not as the corporation, but as the agents of and in behalf of the corporation And this authority may be conferred by a vote passed at a meeting of the directors without the state where the corporation was created and exists.

BILL IN CHANCERY. The bill alleged that the orator had a debt against the Rutland & Burlington Railroad Company, and that he prayed out a writ of attachment thereon, returnable to the September Term of Windham County Court, 1855, and caused the same to be secured by attaching said real estate as the property of said Rutland & Burlington Railroad Company, and that he subsequently recovered judgment in said suit for the

---

\*This case was heard at the Windsor County Term, at Woodstock by agreement, before the judges who held that Term viz: CH. J. POLAND, and Judges PIERPOINT, KELLOGG and PECK.

sum of $2,812.90. damages and his costs, and that execution was duly issued thereon, and extended upon said real estate, and that the time of redemption had long since elapsed without payment of said damages and costs.

The bill further alleged that John A. Conant was in occupancy of said real estate, and in receipt of the rents and profits thereof, under a mortgage deed executed on the 10th day of December, 1853, by one William Raymond Lee, as president of said Rutland & Burlington Railroad Company, which mortgage the orator alleged was void and not effectual as a mortgage security for any indebtedness which might have existed in favor of said Conant against said railroad company.

It appeared from the mortgage set forth in the bill, that the authority to transfer by deed the premises in question was conferred upon said Lee by a vote of the directors of said company, passed at a meeting thereof, holden at Boston, Mass., November 30th, 1853. And the bill prayed that said premises might be wholly relieved from said mortgage, and the title quieted in the orator.

The answer alleged that the mortgage was in no respect void or ineffectual, either as against the company or any other of the parties, and avers that it was legally executed by the corporation to secure a debt of $30,000. justly due the defendant Conant. The answer admitted the attachment, judgment and levy of execution, that the time for redemption had elapsed, and that the *vote* authorizing the execution of said mortgage, was passed by the directors at their said meeting at Boston.

The case was heard upon the bill and answer, and the court, September Term, 1863, BARRETT, CH., made a *pro forma* decree for the defendant dismissing the bill,—from which the orator appealed.

*H. E. Stoughton*, for the orator.

In order to pass the title to this real estate, by mortgage or otherwise, the power to do so must be conferred by some corporate *vote*, and that *vote* must be by the stockholders, or by a

board of directors, who under the charter possess the power to do that corporate act themselves; the assent to the deed must be by some action as a *corporation*, done with *intent to bind the corporation.* 19 Vt. 253; 15 Vt. 519.

It is well settled that a corporation cannot exist out of the limits of the sovereignty which created it. *Bank of Augusta* v. *Earle*, 13 Peters, 584: *Miller* v. *Ewer*, 14 Shepley 509; Angell & Ames on Corporations, §§ 104 and 274.

The implied powers of corporations, and the modes by which those powers may be carried into operation, must depend upon the true construction of the statute creating them. *United States* v. *Dandridge*, 12 Wheaton, 64; *Head & Armory* v. *The Providence Ins. Co.*, 2 Cranch, 127.

Neither the charter of the Rutland & Burlington Railroad Company, nor the act of 1850, providing that railroad companies may secure certain debts in any manner the *corporation* might deem expedient, authorizes the holding of meetings of the corporation out of the state of Vermont, for the transaction of corporate business. And if not, the meeting of the directors out of the state, as a *corporate* body to do corporate acts, was illegal.

Corporations may sue and be sued out of the state, employ counsel, settle and compromise suits, take and give security out of the state, and hold lands in other states. *State* v. *Boston & Concord R. R. Co.*, 25 Vt. 433; *Lumbard* v. *Aldrich*, 8 N. H. 31; 4 John. Ch. R. 370; 6 Conn. 458. But suppose the charter required that to enable the corporation to do any of these acts out of the state, there must be a vote of the corporation authorizing them, would it be contended that any of the authorities cited tended to show that the votes of a body professing to act in the capacity of *corporators* passed at meetings held out of the state would be valid?

All that these authorities or any others show, is that such corporation duly organized and acting within the limits of the state may, by vote transmitted elsewhere or by an agent duly constituted, act and contract beyond the limits of the state.

The distinction is a plain one, that the corporation, whether it be the corporators or directors, cannot hold meetings out of the limits of the state and there by vote create or authorize their agents, but having done so within the limits of the state, their agents may make contracts out of the state.   Angell & Ames on Corp., §§ 104, 274 ; *Bank of Augusta* v. *Earle*, 13 Peters 587 ; *Rangan* v. *Carter et al.*, 14 Peters 129 ; *Bank of U. S.* v. *Dandridge*, 12 Wheaton, 69 ; *Head & Armory* v. *The Prov. Ins. Co.*, 2 Cranch, 153, 154, 155 and 156 ; *Beaty* v. *Lessee of Knowler*, 4 Peters, 166 ; *Miller* v. *Ewer*, 14 Shepley 509.

*E. J. Phelps*, for the defendant, insisted that the fact that the vote authorizing the execution of the defendant's mortgage was passed in Boston, does not invalidate the mortgage ; that there was no charter or statute restrictions to the directors holding meetings outside of the state.   The course of decision is against the rule contended for by the orator.   In *McCall* v. *The Byron Manf'g Co.*, 6 Conn. 428, it was expressly held that directors might hold meetings and pass votes out of the state in which the corporation was chartered.   See also *McDaniels* v. *Flower Brook Manf'g Co.*, 22 Vt. 284 ; Redfield on Railways p. 15 to 22.   And this very mortgage was held valid by this court at the January Term, 1863, in Chittenden County.   *Conant* v. *R. & B. R. Co.*, Op. of. POLAND, J.

In the case of *Miller* v. *Ewer*, 14 Shepley, relied on by the orator, it is expressly conceded by the court that where a corporation is legally organized, *directors' meetings* may be held outside of the state.   The distinction taken by the court is between meetings of *the corporation*, and of the directors.   The latter it is said do not act as a corporate body, but as a board of officers and agents, and may exercise their powers out of the state of the corporation.   The same distinction is observed in Angell & Ames on Corp., § 104 ; *Commonwealth* v. *Cullen*, 13 Penn. 133 ; (11 U. S. Dig. 105.)

POLAND, CH. J.   The orator upon this bill would be entitled to a decree allowing him to redeem the defendant Conant's mort-

gage, but such a decree he declines, and claims a decree that the premises covered by his levy of execution should be wholly relieved from said mortgage, on the ground that as against him it is of no legal force and validity. The only objection made against the mortgage from the Rutland & Burlington Railroad Company to the defendant Conant, is that the meeting of the directors of the company, at which the vote was passed authorizing the president of the company to execute the mortgage, was held in Boston.

In the case of *Conant* v. *Rutland & Burlington Railroad Co.*, decided at the January Term, 1863, in Chittenden County, which was a suit to foreclose this same mortgage, it was claimed that the mortgage was not properly executed because the vote appointing the agent for that purpose, was a vote of the directors merely and not a vote of the stockholders, or corporation itself.

This was claimed to be the meaning of our statute authorizing corporations to convey their real estate by an agent " appointed by vote for that purpose." Though this was then considered as being true of our public, municipal corporations, which have no public officer or officers clothed by law with a sufficient authority to act for them ; yet as to our ordinary business corporations, like banks and railroad companies, whose charters provide for a board of directors, in whom the entire management and control of all the business and affairs of the corporation is vested, it was held not to be true ; and that as such board had full authority to make any purchase or sale of real estate required by the interest of the company, they also had authority by vote to authorize an agent to execute a conveyance.

The orator's counsel does not question the soundness of this view. But he insists, that as the corporation who gave the mortgage was created by the legislature of this state, it could not as a *corporation* legally exist, or act, outside the limits of this state ; and that the vote of the directors appointing an agent to execute a deed, was giving the *corporate* assent to the conveyance, and was therefore a *corporate* act, and though the directors might have authority to give such assent, they could not do it without the state.

It was decided by the supreme court of the United States in *Bank of Augusta* v. *Earle*, 13 Peters 521, that a corporation chartered by a state, might by its agents make contracts in other states.

The general power of a corporation to do business and make contracts, is limited by its charter, and its contracts, wherever made, in order to be valid must be within the proper scope of its corporate power. The corporation being the creation of a local sovereignty cannot properly be said to have a corporate existence beyond the limits of the authority that created it, but the existence of such corporation as a legal person, capable of contracting, is recognized in other states. Contracts made by its authorized agents in other states are therefore regarded as valid, and the courts of such states allow actions to be sustained by and against such corporations, as freely as in the case of corporations created by their own legislatures. The doctrines enunciated in *Bank of Augusta* v. *Earle*, were founded upon such eminent justice and convenience, that to a considerable extent they had obtained in this country before that decision, but still could not be regarded as definitely settled, but since that decision they seem never to have been questioned.

The orator's counsel makes no question of the general power of the directors of the railroad company to act, even in their aggregate capacity as a board, out of this state, in all matters of ordinary business or contract, where they have authority to bind the corporation, but claims that the authorizing an agent to deed, which must be by vote under the statute, is a *corporate* act, and therefore can only be done in the state.

We have no occasion now to discuss or decide whether a corporation created in one state, can legally hold a *corporate meeting* and *pass corporate votes* in another. There certainly seems to be strong reason for holding that they cannot act in a strictly corporate capacity, where they have no legal existence. But we do not regard this conferring authority by the directors upon an agent to execute a deed, as being a corporate act, any more than any and every other act, or contract, they do, or make, on behalf of the corporation.

In every contract made by directors, or any other agent of a corporation, there must be the assent of the corporation to it, or else it would not be bound, but if this assent is a corporate act, which cannot be given out of the state, then all dealings and contracts by them out of the state must come to an end. It is conceded that the directors may make the contract to sell the land without the state; that the agent when properly appointed may execute the conveyance without the state, and the corporation be bound by both these acts. But the mere formal act of authorizing some one to sign the *corporate* name to the conveyance is a corporate act, and must be performed within the state or it is invalid.

It seems to us absurd to say that the whole effect and substance of the contract can be made out of the state, and this mere formality to make the conveyance comply with the requirement of the statute cannot. When it is once conceded that this agent may be appointed by a vote of the directors, and that a vote of the corporation is not required, it seems to us that ends the question. It is a mere question of authority in the directors, and not one of corporate power, and when it is established that the power is vested in the directors, it cannot with any more propriety be said that they are performing a corporate act in conferring it, than in every other matter where they bind the company by their official agency as directors. They act in neither case *as the corporation,* but as the agents of, and on behalf of the corporation.

The orator relies mainly on the case of *Miller* v. *Ewer,* 27 Maine 509. It was decided in that case that a conveyance of land in Maine, by an agent of a Maine corporation, authorized by a vote of the directors of the corporation at a meeting in New York city, was invalid. The case is cited by Angell & Ames on Corp. § 274, as if the point decided was, that the vote of the directors appointing the agent was invalid because their meeting was held out of the state.

But an examination of the case will show that the decision went upon quite a different ground. It appeared that the meeting for the organization of the company and all their corporate

meetings, were held out of the state. The directors themselves who appointed the agent were elected out of the state. It was decided that the corporate meetings could not be legally held out of the state where the corporation did not exist ; that therefore the company was never legally organized, and the directors themselves not legally elected. The court seem to concede that if the company had been legally organized, and the directors legally elected, the fact that they made the appointment of an agent out of the state, would not have made the conveyance by him invalid. They quote the case of *McCall* v. *Byron Manf'g Co.*, 6 Conn. 428, in which it was decided that the appointment of a secretary for a Connecticut corporation, by the directors at a meeting held in the city of New York, was legal, with no expression of disapprobation whatever. And it is added in the case, " but the directors of a corporation are not a corporate body when acting as a board, though they are competent to act as agents beyond the bounds where the corporation exists."

It appeared in the above case in the 6th Conn. that all the stockholders meetings were also held in the city of New York, but their power to act out of the state was not discussed. So far as this case binds any authority in favor of the proposition that corporate meetings can legally be held, except in the state creating the corporation, it was disapproved by the supreme court of Maine, but no farther.

We are satisfied that the validity of the vote of the directors appointing the agent to execute the mortgage to the defendant Conant, is not affected by being passed at a meeting of the directors held out of the state, and as this is the only objection made by the orator to the mortgage, the decree of the chancellor dismissing his bill is affirmed.